IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Benjamin T. Alston,<br><br>          Plaintiff,<br><br>   vs.<br><br>GE Gas Turbines (Greenville), LLC,<br><br>          Defendant. | Civil Action No.6:08-2897-HMH-BHH<br><br>**REPORT AND RECOMMENDATION**<br>**OF MAGISTRATE JUDGE** |

This matter is before the Court on the defendant's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. [Doc. 61.] The plaintiff has pled claims for disability discrimination and denial of disability benefits, in violation of the Americans with Disabilities Act (ADA); race and gender discrimination, and workers' compensation retaliation.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A), and Local Rule 73.02(B)(2)(g), D.S.C., all pretrial matters in employment discrimination cases are referred to a United States Magistrate Judge for consideration.

## FACTUAL BACKGROUND

The plaintiff began his employment with the defendant, in 1992, as an Assembler. (Pl. Dep. at16.) The defendant is part of the Global Supply Chain Management division of GE Energy which sells gas turbines and power generation services worldwide. (Hill Aff. ¶ 1.) The plaintiff's job duties as an Assembler included wiring, tubing, $CO_2$, and instrumentation. (Pl. Dep. at 16.) The plaintiff worked as an Assembler until 2000, when he was transferred to the taping area. (Pl. Dep. at 19.) On the taping table, the plaintiff's primary responsibility was taping parts of a bucket together. A bucket (airfoil) catches the hot gas and force sent from the combustion chamber and uses that force to rotate the unit

rotor, which is connected to a compressor. (Hill Aff. ¶ 1.) The plaintiff worked on the taping table from 2000 until June 2007 when he went out on a medical leave of absence and never returned. (Pl. Dep. at 19; 97.)

The plaintiff suffered a back injury while employed with GE during 1994. (Pl. Dep. at 23-24.) The plaintiff was working in a confined space and twisted his lower back. (Pl. Dep. at 24.) He sought medical treatment for his back and went out on a medical leave of absence sometime in late 1994. (Pl. Dep. at 26.) When he returned from the leave of absence, the plaintiff returned to his job as an Assembler and worked there until 2000. (Pl. Dep. at 26.) In 2000, the plaintiff was transferred out of the Assembler position. (Pl. Dep. at 19.) The defendant contends that the transfer was necessary because the plaintiff had a history of back problems and a number of physical restrictions (including: no lifting over 15 pounds; not working in a confined space where he could twist his lower back; and no working over eight hours per day), which limited his ability to perform the duties of an Assembler. (Pl. Dep. at 21-22.)

The plaintiff was working under the same medical restrictions from 2000 until 2005, when he suffered an on-the-job injury. (Pl. Dep. at 22; Ex. 1.) On or about July 18, 2005, the plaintiff began experiencing pain in his neck, shoulder, and right arm. (Pl. Dep. at 50.) The plaintiff believes that his injury was caused in part by the defendant changing the type of tape that was being used at the taping table and the method by which he was required to tape the buckets. (Pl. Dep. at 50.)

The plaintiff continued to work for several months, after aggravating his neck and shoulder, before going out on a three-month leave of absence in late 2005. (Pl. Dep. at 69-70.) He returned from a workers' compensation leave of absence in February 2006. When he returned in February 2006, the plaintiff returned to his same job position on the

taping table. (Pl. Dep. at 70.) He continued to work on the taping table until he went out on a medical leave of absence in June 2007. (Pl. Dep. at 74-75.)

In April 2007, the plaintiff began seeing a Dr. LeBlond for lower back pain. (Pl. Dep. at 93, Ex. 7.) Dr. LeBlond wrote the plaintiff out of work on or about June 25, 2007, and he never returned to employment at GE. (Pl. Dep. at 96-97.) When the plaintiff went out of work on a medical leave of absence in June 2007, he filed for short-term disability benefits. The short-term disability benefits were denied, and he appealed the denial of the short-term disability benefits and sought reconsideration on three separate occasions through the defendant's administrative appeals process. (Pl. Dep. at 98, Exs. 10, 11, 12.) By the defendant's own policy, the plaintiff was protected for 12 months while on disability leave, but his employment was eventually terminated when he was unable to return to work within that 12-month time frame resulting in a break in service. (Pl. Dep. at 100; Hill Aff. ¶ 4, Ex. 3.)

## **APPLICABLE LAW**

Federal Rule of Civil Procedure 56(c) states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue

of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Furthermore, Rule 56(e) provides in pertinent part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

4

Fed. R. Civ. P. 56(e). Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must produce existence of every element essential to his action that he bears the burden of adducing at a trial on the merits.

**DISCUSSION**

**I. ADA Claim**

The plaintiff contends that the defendant discriminated against him on account of his disability. The plaintiff alleges that he was deprived jobs that "would be less physical [sic] demanding prior and doing [sic] the process of his disabilities being amplified due to performing abnormal new methods, materials and pre-existing disability." (Compl. ¶ 19.) In his response to summary judgment, he states that there "were plenty of other things to do but they [defendant] insisted on putting me in bad predicaments." (Resp. Summ. J. at 4.) The plaintiff, however, does not identify any job or accommodation which he requested but was denied nor has he identified any specific instance where the defendant allegedly discriminated against him on account of his disability. He has submitted a fair amount of evidentiary attachments which, after inspection, appear to be almost exclusively related to the documentation of his injuries, in the form of medical records, and his attempts to secure worker's compensation and disability benefits. It has not been explained to the Court, nor can the Court discern, how the records indicate discrimination on account of his disability.

To the Court, the plaintiff's allegations are rightly characterized as a failure to accommodate claim. The ADA prohibits discrimination against "a qualified individual with a disability" with respect to "job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Even though a disabled employee is unable to perform the essential functions of an employment position, his termination may nevertheless be unlawful if the employer has failed to *reasonably accommodate* the employee's disability. *See School Bd. of Nassau County v. Arline*, 480 U.S. 273, 287 n. 17 (1987); *Tyndall v. National Educ. Centers*, 31 F.3d 209, 213 (4th Cir.1994).

To establish a *prima facie* case for failure to accommodate a disability under the ADA, a plaintiff must show that: (1) he was an individual who had a disability within the meaning of the statute; (2) his employer had notice of his disability; (3) with reasonable accommodation he could perform the essential functions of his position; and (4) his employer refused to make such accommodations. *See Rhoads v. F.D.I.C.*, 257 F.3d 373, 387 n. 11 (4th Cir.2001).

The defendant first contends that the plaintiff cannot make out a disability discrimination claim because he is not a qualified individual. A "qualified individual with a disability" is defined as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). The defendant argues, therefore, that because the plaintiff admits to being totally disabled, he cannot perform the essential functions of his employment and should be estopped from claiming to be a qualified individual under the ADA.

It does not appear, however, that total disability and status as a "qualified individual" are perfectly and mutually exclusive notions. *See Fox v. General Motors Corp.*, 247 F.3d 169, 178 (4th Cir. 2001; *Cathcart v. Flagstar Corp.*, 1998 WL 390834, at *8 (4th Cir. June 29, 1998). A plaintiff may be able to proffer an explanation for any apparent conflict between alternate positions taken concerning disability for purposes of the ADA and other statutory remedies such as worker's compensation or social security. *See id.* Here, as far as the Court can tell, there is no clear evidence that the plaintiff or anyone else considered him completely disabled prior to June 25, 2007. (Pl. Dep. at 96-97.) Accordingly, it is conceivable that he means to say that he was discriminated on account of his disability prior to that time. Unfortunately, the plaintiff has made very little effort to explain the factual circumstances of his disability claim. As a result, the Court could probably conclude that he has not carried his burden to demonstrate that he was a qualified individual under the

Act. But, because there is no dispute that he suffered a work-related disability, and yet continued to work with restrictions (see Mem. Supp. Summ. J. at 3), it seems a better result to conclude that genuine issues of fact remain as to his status as a qualified individual under the statute, during times when he might have not been totally disabled. The Court need not resolve it, though.

Ultimately, the plaintiff cannot escape the consequences of his failure to specifically argue his claim in response to summary judgment. Specifically, he has made no effort to explain how his disability was unaccommodated or how he was otherwise discriminated against. While his Complaint summarily identifies various instances where his disability was allegedly unaccommodated (Compl. at 2), his five page memorandum in response to summary judgment is essentially silent as to this issue. The plaintiff has not produced evidence that any such events occurred, that he could not perform the alleged tasks, or that an accommodation was not offered. While the defendant charitably attempts to speculate concerning these putative allegations of a failure to accommodate, derived from the plaintiff's deposition testimony and Complaint, such allegations are left unaddressed by the plaintiff in response to summary judgment, both in argument and evidence. Although constrained to liberally construe his pleadings, as a *pro se* plaintiff, the Court will neither strain to discover a factual predicate for his claims, which the plaintiff himself has not offered even in a conclusory fashion, nor will it look for evidentiary support for the same. The plaintiff's summary judgment response is completely devoid of any allegations of relevant discrimination based on his disability. The plaintiff does recount an incident in 1999 where he contends that a Ken Young insisted that he return to the defendant's medical examiner to remove restrictions for work. (Resp. Summ. J. at 4.) But, that allegation would be out of time. Claimants under the ADA must file a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") within 180 days of the alleged discriminatory practice. 42 U.S.C. § 12117(a). There is no evidence

that a timely charge of discrimination was filed as to that incident and somehow delayed such that his current Complaint regarding the same incident could be considered timely.

The plaintiff's summary judgment response is almost exclusively about difficulties he has had securing disability benefits. The Court will not simply speculate as to what the plaintiff intended. Out of an abundance of caution, the defendant has been generous to do so, where even the plaintiff, himself, has not. Out of a consideration for the requirements of the federal and local rules – that the plaintiff support his claim with admissible evidence specifically cited to in his brief and which create issues of fact for consideration by a jury, Fed. R. Civ. P. 56, Local Rule 7.06 D.S.C. – and for matters of judicial economy and restraint, the Court cannot do the same.

No jury could find for the plaintiff on the his disability discrimination claim. For the exact same reasons (a want of argument and evidentiary citation) and to the extent the plaintiff means to make a claim for disability harassment, that claim must fail. He makes no argument or evidentiary showing concerning such a claim.

## II. Title VII Claims

The plaintiff has also pled claims for gender and race discrimination. He contends that he was denied short term disability and worker's compensation where "all other employees in same department, on same shift that became disabled" received them. (Compl. ¶ 26.) The defendant has moved for summary judgment on the grounds that the plaintiff has not identified any employees who were similarly situated but treated differently.

A plaintiff can survive a motion for summary judgment by presenting either direct or circumstantial evidence that raises a genuine issue of material fact as to whether an impermissible factor such as race or gender motivated the employer's adverse employment decision. *See Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 318 (4th Cir. 2005) (quoting *Hill v. Lockheed Martin Logistics Management, Inc.*, 354 F.3d 277, 284 (4th Cir. 2004) (emphasis added). Alternatively, a plaintiff may "proceed under [the *McDonnell*

8

*Douglas* ] 'pretext' framework, under which the employee, after establishing a *prima facie* case of discrimination, demonstrates that the employer's proffered permissible reason for taking an adverse employment action is actually a pretext for discrimination." *Hill*, 354 F.3d at 285.

The plaintiff has not employed either avenue. The defendant, however, has met its initial burden of demonstrating to the Court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Specifically, the defendant has submitted evidence that the plaintiff cannot establish a *prima facie* case of discrimination pursuant to *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). The defendant's evidence indicates that the plaintiff cannot identify any similarly situated individuals who were treated differently. The individuals identified in the plaintiff's deposition are either African-American, like the plaintiff, or male, also like the plaintiff. (See Pl. Dep. at 102-04.) Accordingly, the plaintiff cannot establish the fourth element of his *prima facie* case, under the *McDonnell Douglas* burden shifting scheme, because he has not identified in individuals *outside* the protected classes who were treated differently than himself. *See Honor v. Booz-Allen & Hamilton, Inc.*, 383 F.3d 180, 189 (4th Cir. 2004); *Bryant v. Aiken Reg. Med. Ctrs., Inc.*, 333 F.3d 536, 544-45 (4th Cir. 2003); *Amirmokri v. Baltimore Gas & Elec. Co.*, 60 F.3d 1126, 1129 (4th Cir.1995).

In fact, as far as the Court can tell, the plaintiff has made no argument as to his race and gender claims on summary judgment at all. He has not identified any individuals who were treated differently than him, similarly situated or otherwise, and has not put forward any other evidence from which an inference of such discrimination could be drawn. In his response to summary judgment, he has provided no names, no description of their disability or behavior, and no explanation of how they might have been treated differently. He has not created any issues of fact from which a jury could conclude that he was discriminated against on account of his race or gender. The claim should be dismissed.

### III. Workers' Compensation Retaliatory Discharge Claim

South Carolina prohibits an employer from discharging or demoting an employee because the employee has instituted or caused to be instituted in good faith any proceeding under South Carolina's Workers' Compensation Law. *See* S.C. Code §41-1-80. The employee carries the burden of proving that his discharge or demotion is because he instituted proceedings under the South Carolina Workers' Compensation Law. S.C. Code § 41-1-80. To prove his claim, the plaintiff must show that (1) he instituted a workers' compensation claim, (2) he was discharged or demoted, and (3) a causal connection exists between the two events. *Hinton v. Designer Ensembles, Inc.*, 540 S.E.2d 94, 97 (S.C. 2000). The appropriate test for causation is a showing that the employee would not have been discharged "but for" the filing of his workers' compensation claim. *Id*.

The plaintiff suffered an on-the-job injury on or about July18, 2005. (Pl. Dep. at 50.) He continued to work for several months before going out on a leave of absence between late 2005 and February 2006. (Pl. Dep. at 69-70.) The plaintiff filed a workers' compensation claim, and his workers' compensation case is still ongoing. (Pl. Dep. at 97.) The plaintiff returned to work in February 2006 and worked another 15 months before he was written out of work by his physician, a Dr. LeBlond, for lower back pain, which was not covered by worker's compensation. (Pl. Dep. at 95, 96; Ex.8.) Dr. LeBlond wrote Alston out of work on June 25, 2007, and the plaintiff never returned to employment at GE. (Pl. Dep. at 96-97.)

Pursuant to the defendant's policies and procedures, an employee is entitled to a maximum 12-month medical leave of absence for a *non* work-related absence. (Hill Aff. ¶ 4 & Ex. 3.) The plaintiff's employment was terminated in June 2008, after being on a medical leave of absence for 12 months and being unable to return to work at the expiration of his 12-month leave of absence. (Hill Aff. ¶ 4.)

The defendant, therefore, has articulated a non-retaliatory reason for the plaintiff's termination. If an employer articulates a legitimate, nonretaliatory reason for the termination, the proximity in time between the work-related injury and the termination is not sufficient evidence to carry the employee's burden of proving a causal connection. *Hinton,* 540 S.E.2d at 97; *cf. Johnson v. J.P. Stevens & Co., Inc.*, 417 S.E.2d 527, 529 (S.C. 1992) ("In light of the conceded legitimate, nonretaliatory motives for the termination, [the] proximity in time does not meet the employee's burden of proof."); *Marr v. City of Columbia*, 416 S.E.2d 615 (S.C. 1992) (rejecting retaliatory discharge claim where only evidence suggesting retaliatory motive for discharge was temporal proximity of claim to discharge) *with Horn v. Davis Electrical Constructors, Inc.*, 416 S.E.2d 634, 636 (S.C. 1992) (finding that where temporal proximity of injury and discharge existed, "in addition to other retaliatory evidence in the record as well as [employer's] admission that evidence of retaliation existed," plaintiff established termination in violation of statute).

The plaintiff contends that the defendant's non-retaliatory explanation is pretextual insofar as its own handbook actually permits an 18-month leave of absence. (Hill Aff., Ex. 3.) It is true that the handbook provides for an 18-month leave of absence but only for work-related disability. *Id*. It is undisputed that the absence for which the plaintiff was terminated was not covered by worker's compensation leave. (Pl. Dep. at 95.) Accordingly, he was subject to the 12-month absence provision for non work-related disability. (Hill Aff., Ex. 3.)

The plaintiff, therefore, has not created any issues of fact regarding the causation element of his retaliation claim. It should be dismissed.

**IV.   Disability Benefits Claim**

As a part of his ADA claim, the plaintiff has also pled a claim for short-term disability benefits. A claim for short term disability benefits under Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1132(a)(1)(B), however, must be exhausted before

11

gaining access to the federal courts. *See Gayle v. United Parcel Services, Inc.*, 401 F.3d 222, 226 (4th Cir. 2005). It is undisputed that the plaintiff had not exhausted his administrative remedies concerning his short-term disability benefits at the time of the filing of this lawsuit, on August 19, 2008. (Hill Aff. ¶ 3, Ex. 2.) Exhaustion is measured at the time of the filing of the Complaint. *See Galvan v. SBC Pension Benefit Plan*, 204 Fed. Appx. 335, 342 (5th Cir. 2006). The fact that the plaintiff has since exhausted such claim is of no moment, therefore. Notwithstanding, the plaintiff has now instituted a separate action for benefits in this District. *See Alston v. GE Short Term Disability Welfare Plan*, Case No. 6:09-1668-RBH. The Court, therefore, believes this element of the plaintiff's claim should be dismissed without prejudice.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, the Court recommends that the defendant's motion for summary judgment be GRANTED. All claims should be dismissed *with prejudice* except for the plaintiff's claim for disability benefits, which should be dismissed *without prejudice*.

IT IS SO RECOMMENDED.

s/Bruce H. Hendricks
United States Magistrate Judge

October 22, 2009
Greenville, South Carolina

**The plaintiff's attention is directed to the important notice on the next page.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> P.O. Box 10768
> Greenville, South Carolina 29603

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).